THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HUGH COATES, | § | SA-13-CV-255-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| EC&R DEVELOPMENT, L.L.C., A | § | |
| DELAWARE LIMITED LIABILITY | § | |
| COMPANY; TETRA TECH | § | |
| CONSTRUCTION INC.; and | § | |
| ANACACHO WIND FARM, LLC, | § | |
| | § | |
| Defendants. | § | |
| | § | |

ORDER DENYING TETRA TECH'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

On December 7, 2015, the Court heard oral argument on the Motion for Partial Summary Judgement (Dkt. # 77) filed by Defendant Tetra Tech Construction, Inc. ("Tetra" or "Defendant"). Michael Choyke, Esq., appeared on behalf of Defendant; Thomas Hall, Esq., appeared on behalf of Plaintiff Hugh Coates ("Coates" or "Plaintiff"). At the hearing, the Court ordered the parties to submit additional briefing regarding the identity of "Repo," an individual referenced in relevant deposition testimony. After careful consideration of the

1

memoranda and supplemental briefings in support of and in opposition to the motion, and in light of the parties' arguments at the hearing, the Court, for the reasons that follow, **DENIES** Defendant's Motion for Partial Summary Judgment. (Dkt. # 77.)

BACKGROUND

Plaintiff is a rancher who has run a cattle operation on the Mitchell Circle Bar Ranch ("Mitchell Ranch" or the "Property") pursuant to a Grazing Lease since 1976. ("Compl.," Dkt. # 1 ¶ 15; "Agreemt.," Dkt. # 1, Ex. A at 1.) Plaintiff raises cattle, horses, and other livestock on the Property. (Compl. ¶¶ 15–16.) Landowner Tom Mitchell, through his successor in interest Mitchell Ranch, entered into an Option agreement with EC&R Development ("EC&R") on May 1, 2007, granting EC&R and its assigns a Wind Lease to construct, install, operate, and maintain a wind farm on the Mitchell Ranch. (Agreemt. at 1–2.)  The Wind Lease involves the same property subject to Plaintiff's Grazing Lease. (Id.) Plaintiff renewed his Grazing Lease on the Mitchell Ranch on July 26, 2010. (Compl. ¶ 6.) On the same day, Plaintiff entered into a Subordination and Non-Disturbance Agreement with Mitchell Ranch and EC&R, subordinating Plaintiff's rights under the Grazing Lease to the rights associated with the Wind Lease, and agreeing not to "disturb or unreasonably interfere with . . . possession, rights, or interests under the Option and the Wind Lease." (Agreemt. at 2–3.)

According to Plaintiff, the Wind Lease permitted EC&R, by and through its subsidiary, Anacacho Wind Farm, LLC ("Anacacho") to construct and operate fifty-one wind turbine generators on the Property.  (Compl. ¶ 6.) Anacacho entered into an agreement with Tetra to construct the wind turbine generators.  (Id. ¶ 7.)  According to Plaintiff, Anacacho and Tetra cut some interior and perimeter fences on Mitchell Ranch during construction.  (Id.)[1]  Finally, Plaintiff claims that Tetra's employees routinely failed to close gates that were opened during construction.  (Id.)  According to Plaintiff, the damage to interior and perimeter fences, as well as the open gates, allowed his livestock both to escape the Property and to breed inappropriately with other livestock.  (Id.)

On March 28, 2013, Plaintiff filed suit against Defendants, asserting a cause of action, among others, for gross negligence.  (Dkt. # 1.)  On August 28, 2015, Tetra filed the instant Motion for Partial Summary Judgment.  (Dkt. # 77.) Plaintiff filed a response on October 2, 2015.[2]  (Dkt. # 85.)  On December 18, 2015, Coates timely filed his supplemental briefing, as ordered by the Court.  (Dkt. # 93.)  On December 28, 2015, Defendant filed its response.  (Dkt. # 96.)

---

[1] Plaintiff claims that several of the openings in both the interior and perimeter fences were over sixty feet wide.  (Compl. ¶ 7.)  Plaintiff further claims that the cuts were not repaired "for months."  (Id.)

[2] The Court notes that Plaintiff did not file a Motion requesting an extension of time to file a Response to Defendant's Motion; accordingly, Plaintiff's response was not timely.  Nonetheless, the Court will consider the filing.

<u>LEGAL STANDARD</u>

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251–52 (1986). The main purpose of summary judgment is to dispose of factually unsupported claims and defenses. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323–24 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. <u>Id.</u> at 323. If the moving party meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial. <u>ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.</u>, 699 F.3d 832, 839 (5th Cir. 2012). In deciding whether a fact issue exists, the Court "may not make credibility determinations or weigh the evidence." <u>Tibler v. Dlabal</u>, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000)). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." <u>Brown v. City of Hous.</u>, 337 F.3d 539, 541 (5th Cir. 2003). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Hillman v. Loga</u>, 697 F.3d

4

299, 302 (5th Cir. 2012) (quoting <u>Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).

<u>ANALYSIS</u>

Defendant Tetra has moved for partial summary judgment, arguing that Coates' claims for gross negligence fail as a matter of law because Coates has failed to allege any facts in his Original Complaint to support the elements of a gross negligence claim.  (Dkt. # 77 at 1–2.)

"The standard for proving gross negligence under Texas law is considerably more stringent than the 'reasonable person' standard for ordinary negligence."  <u>Henderson v. Norfolk Southern Corp.</u>, 55 F.3d 1066, 1070 (5th Cir. 1995).   The presence of gross negligence is established by meeting both prongs of a two-part test.  First, "viewed objectively from the actor's standpoint, the act or omission complained of must depart from the ordinary standard of care to such an extent that it creates an extreme degree of risk of harming others."  <u>Columbia Med. Ctr. of Las Colinas, Inc., v. Hogue</u>, 271 S.W.3d 238, 248 (Tex. 2008); <u>see also</u> <u>Transportation Ins. Co. v. Moriel</u>, 879 S.W.2d 10, 23 (Tex. 1994).  Second, "the actor must have actual, subjective awareness of the risk involved and choose to proceed in conscious indifference to the rights, safety, or welfare of others."  <u>Hogue</u>, 271 S.W.3d at 248; <u>see also</u> <u>Moriel</u>, 879 S.W.2d at 23.

I.  Extreme Risk of Harm Analysis

The first prong of the gross negligence test asks whether the defendant was objectively aware that its act or omission would create an extreme risk of harm for others.  "'Extreme risk' is not 'a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff.'"  Hogue, 271 S.W.3d at 248 (quoting Moriel, 879 S.W.2d at 22); see also Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 922–24 (Tex. 1998) (finding failure to warn contract workers of the extreme risks, such as death, associated with prolonged benzene exposure met the first prong of the gross negligence test, where the defendant should have been objectively aware of such risks).  Whether the degree of risk is extreme is measured by "considering the probability and the magnitude of the potential harm to others."  Russell Equestrian Ctr., Inc. v. Miller, 406 S.W.3d 243, 251 (Tex. App. 2013) (quoting Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 785 (Tex. 2001)).  Further, the risk must be "of serious harm, 'such as death, grievous physical injury, or financial ruin.'"  Henderson, 55 F.3d at 1070 (quoting Moriel, 879 F.2d at 24); also see Miller, 406 S.W.3d at 251–52 (finding failure to contain horses on a ranch, where two escaped horses struck and totaled plaintiff's car and caused bodily injury, did not meet the standard for gross negligence because failure to contain the horses did not depart so far from the ordinary degree of care that it created an extreme risk of serious injury).  "An

act or omission that is merely ineffective, thoughtless, careless, or not inordinately risky is not grossly negligent." <u>BP Oil Pipeline Co. v. Plains Pipeline, L.P.</u>, ---S.W.3d---, 2015 WL 3988574 at *11 (Tex. App. 2015) (quoting <u>Reeder v. Wood Cty. Energy, LLC</u>, 395 S.W.3d 789, 797 (Tex. 2012). Finally, this risk "must be examined prospectively from the perspective of the actor, not in hindsight." <u>Hogue</u>, 271 S.W.3d at 248.

In this case, it was objectively foreseeable that Tetra's alleged act (cutting the fences) and alleged omission (failure to close the fences) would cause harm to the Plaintiff. However, in order for these acts to be grossly negligent, they must, viewed objectively, present an extreme risk of harm to the Plaintiff. Coates states that the harm caused him significant financial damage.[3] (Compl. ¶¶ 15–23; "Coates Aff.," # 93, Ex. A at 2.) As stated previously, the risk of financial ruin may amount to extreme risk for the purposes of gross negligence. Therefore, a fact issue exists as to whether such damage was objectively foreseeable. Accordingly,

---

[3] Coates' affidavit states:

> I had spent 44 years of my life working hard to build up my business so that I can sell my cattle and retire in 2014. Instead . . . I ultimately had no choice but to sell cattle in 2012 during a bad market year, while my cattle were in poor shape, at a severely low price, shattered any hope I had of retiring or even making a reasonable living."

(Coates Aff. at 2.)

genuine issues of material fact exist as to the first prong of the gross negligence

test.

II. <u>Subjective Awareness of the Risk Analysis</u>

       With regard to the second prong of the gross negligence test, "[i]t is

the plaintiff's burden to show that the defendant knew about the peril but his acts

or omissions demonstrate that he did not care."  <u>Sage v. Howard</u>, 465 S.W.3d 398,

407 (Tex. App. 2015); <u>also see</u> <u>Louisiana-Pacific Corp. v. Andrade</u>, 19 S.W.3d

245, 246–47 (Tex. 1999).

       At this stage of the litigation, genuine issues of material fact remain as

to whether Coates has met his burden to demonstrate that Tetra "knew about the

peril" that could result from its acts.  As evidence, Plaintiff provides an excerpt of

his deposition testimony in order to demonstrate that Tetra was aware of the peril

resulting from its acts:

> A: I had a witness that was sitting in my truck, and I stopped Repo
> one day and I said, Repo, ya'll are going to have to put my fences
> back and start closing these damn gates.  My livestock is just going all
> over the ranch, man.  I've got Charolais bulls breeding my heifers.
>
> And I said, it's just a – it's a train wreck.  I've got studs down here
> breeding my mares at the wrong time of the year.
>
> He goes, Coates, there's 400 people here.  Boys will be boys.  There's
> no way we can make them close all these gates.
>
> . . .
>
> A: I talked to everybody on that job.  Every time I saw someone on

that job I said, Go fix my damn fences.

Q: Okay.

A: Fix my gates.

("Coates Dep.," Dkt. # 1, Ex. C at 308–309.)[4]

At the hearing, the Court ordered the parties to submit supplemental briefing to determine "Repo's" identity.  Plaintiff submitted an affidavit identifying "Repo" as Mike Repholz.[5]  (Dkt. # 93 at 2; Coates Aff. at 1.)  Plaintiff also submitted deposition testimony stating that Mike Repholz held a managerial position at Tetra[6] (Coates Dep. at 35), that he was responsible for supervising the

---

[4] Plaintiff's supplemental pleading included the expanded excerpts from Coates' deposition testimony.  (Dkt. # 85 at 2.)

[5] Coates' affidavit states: "I had various dealings with a gentleman named Mike Repohlov [sic] . . .  He was referred to as Repo.  He was the Superintendent for the job for Tetra Tech.  He was from New York."   (Coates Aff. at 1.)

[6]  Coates' 2013 deposition describes "Repo's" managerial position:

Q: Who is Repo?

A: He was there, you know…

Q: Do you know his real name?

A: His last name is Repo.

Q: R-e-p-o?

Tetra employees who cut the fences on the Mitchell Ranch[7] ("Toberman Dep.,"

Dkt. # 93, Ex. D at 59–60), and that at least some Tetra employees viewed him as a

project superintendent[8] ("Roberson Dep.," Dkt. # 93, Ex. E at 20–21).

---

> A: No. He has a real weird spelling.  I don't -- but he was like the
> superintendent for the job from New York for Tetra Tech.

(Coates Dep. at 35.)

[7] Mr. Toberman, a project manager at Tetra, stated in his deposition that Mr.
Repholz was responsible for supervising Tetra employees cutting fences:

> Q.  And so, would it have been your job in the summer of 2012 to
> make sure that Mr. Roberson knew what the specifications were about
> cutting fences on this ranch?
>
> Ms. Culley: Object to form.
>
> A.  No.
>
> Q.  (by Mr. Hall) And whose -- again, whose would it have been if it
> wasn't yours?
>
> A.  A name?
>
> Q.  Yes.
>
> A.  Mike Repholz.

(Toberman Dep. at 59–60.)

[8] Mr. Roberson, a Tetra employee, gave the following deposition testimony:

> Q: Okay. And who -- who gave you direction as the civil
> superintendent about where fences had to be cut?
>
> A: Originally, it was Shorty McGraw and then Repold [sic].  Mike

10

At this stage of the litigation, this testimony is sufficient evidence which raises a genuine question of material fact as to the second prong of the gross negligence test.  If Mr. Repholz held a managerial position at Tetra, and if he was subjectively aware of the risk associated with leaving the fences open, a factfinder may determine there is sufficient information to satisfy the second prong of the gross negligence test.  This question of fact defeats summary judgment at this stage.

III. <u>Corporate Liability for Acts that Could Result in the Award of Exemplary Damages</u>

Defendant argues that *even if* the Court finds that there is evidence to support the elements of a gross negligence claim as to Mr. Repholz, Plaintiff has not alleged specific facts to attribute Mr. Repholz's conduct to Tetra, entitling Tetra to partial summary judgment on the issue of gross negligence.  (Dkt. # 77 at 2; Dkt. # 96 at 4–5.)

In Texas, a corporation is only liable for gross negligence or acts otherwise worthy of exemplary damages in limited circumstances.  <u>Ellender</u>, 668 S.W. 2d at 921 (finding that "[a] corporation may be liable in punitive damages for gross negligence only if the corporation itself commits gross negligence").  A

---

Repold.  Sometimes Scott McManus might have been in on a little of it.  Scott - - I don't know what Scott's name was.  It might not have been McManus.  I don't know.

(Roberson Decl. at 20.)

corporation is liable for the acts of an agent for the purposes of exemplary

damages, such as those imposed due to gross negligence, if:

> (a) The principal authorized the doing and the manner of the act, or
>
> (b) The agent was unfit and the principal was reckless in employing him, or
>
> (c) The agent was employed in a managerial capacity and was acting in the scope of employment, or
>
> (d) The employer or a manager of the employer ratified or approved the act.

Purvis v. Prattco, Inc., 595 S.W.2d 103, 104 (Tex. 1980) (quoting Fisher v.

Carrousel Motor Hotel, Inc., 424 S.W. 2d 627, 630 (Tex. 1967)).  Such agents, for

whose actions a corporate entity may be liable in gross negligence, are frequently

referred to as "vice principals" of the corporation.  See Hammerly Oaks, Inc. v.

Edwards, 958 S.W.2d 387, 390 (Tex. 1997); Fort Worth Elevators, Co. v. Russell,

70 S.W.2d 397, 402 (Tex. 1934), overruled on other grounds by Wright v. Gifford–

Hill & Co., 725 S.W. 2d 712 (Tex. 1987)).

    As explained above, Plaintiff introduced deposition testimony stating

that Mr. Repholz worked in a supervisory role at Tetra.  While it is unclear whether

Mr. Repholz's position rose to the level of management required to attribute gross

negligence to Tetra, this testimony is sufficient to raise a genuine issue of material

fact to defeat the motion for summary judgment.  Accordingly, Tetra's objection

does not thwart summary judgment here.

CONCLUSION

At this stage of the litigation, there are numerous questions of material fact which defeat summary judgment on Plaintiff's claim for gross negligence. Accordingly, the foregoing, the Court **DENIES** Tetra's Motion for Partial Summary Judgment on Gross Negligence.  (Dkt. # 77.)

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, January 14, 2015.

David Alan Ezra
Senior United States Distict Judge